```
                                  United States Bankruptcy Court
                                   Western District of Arkansas
In re:                                                                            Case No. 13-72529-btb
Bobby Joe Hatton                                                                  Chapter 7
Wanda June Hatton
        Debtors
```

## CERTIFICATE OF NOTICE

```
District/off: 0861-6          User: latrese              Page 1 of 1                  Date Rcvd: Mar 09, 2015
                              Form ID: pdf08Ac           Total Noticed: 2


Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Mar 11, 2015.
db            +Bobby Joe Hatton,   PO Box 53,   Sims, AR 71969-0053
               Stephen  Smith,    P. O. Box 10205,   Ft. Smith, AR  72917-0205

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                                TOTAL: 0

             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                                TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 11, 2015                                               Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

```
The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on March 9, 2015 at the address(es) listed below:
              David B Kaufman    on behalf of Creditor    Arkansas Dept. of Finance & Admin. (1272)
               david.kaufman@dfa.arkansas.gov,    denice.taylor@dfa.arkansas.gov
              Eric Lowell Pendergrass    on behalf of Creditor    Farm Credit Services of Western Arkansas
               elp.smcrh@mac.com
              Farm Credit Services of Western Arkansas     elp.smcrh@mac.com
              Frederick S. Wetzel, III    on behalf of Auctioneer Jess  Gideon frederickwetzel@sbcglobal.net,
               fswetzel@fswetzellaw.com
              Frederick S. Wetzel, III    on behalf of Surveyor Phillip  Sloan frederickwetzel@sbcglobal.net,
               fswetzel@fswetzellaw.com
              Frederick S. Wetzel, III    on behalf of Trustee Frederick S. Wetzel, III
               frederickwetzel@sbcglobal.net,    fswetzel@fswetzellaw.com
              Frederick S. Wetzel, III    frederickwetzel@sbcglobal.net;AR10@ecfcbis.com,
               legalassistant@fswetzellaw.com
              John  Howard    on behalf of Creditor Eugene  Parliment howard.john@sbcglobal.net,
               blankyk@sbcglobal.net
              John  Howard    on behalf of Plaintiff Eugene  Parliment howard.john@sbcglobal.net,
               blankyk@sbcglobal.net
              Marc  Honey    on behalf of Joint Debtor Wanda June Hatton mhoney@honeylawfirm.com,
               honeylawfirm@gmail.com;hlfecfbackup@gmail.com;lasonia@honeylawfirm.com;shannon@honeylawfirm.com;l
               ysa@honeylawfirm.com;judith@honeylawfirm.com;emily@honeylawfirm.com
              Marc  Honey    on behalf of Debtor Bobby Joe Hatton mhoney@honeylawfirm.com,
               honeylawfirm@gmail.com;hlfecfbackup@gmail.com;lasonia@honeylawfirm.com;shannon@honeylawfirm.com;l
               ysa@honeylawfirm.com;judith@honeylawfirm.com;emily@honeylawfirm.com
              Richard L. Cox    on behalf of Creditor    Diamond Bank rlcpa@hsnp.com
              U.S. Trustee (ust)    USTPRegion13.LR.ECF@usdoj.gov,
               Shari.Sherman@usdoj.gov;Cecilia.A.Boyle@usdoj.gov;jackie.a.evatt@usdoj.gov;jill.p.eschbacher@usdo
               j.gov;eliane.m.archambeault@usdoj.gov
              William Marshall Hubbard    on behalf of Debtor Bobby Joe Hatton mhubbard@honeylawfirm.com,
               judith@honeylawfirm.com;mhoney@honeylawfirm.com;emily@honeylawfirm.com;lasonia@honeylawfirm.com;l
               ysa@honeylawfirm.com;honeylawfirm@gmail.com;hlfecfbackup@gmail.com;shannon@honeylawfirm.com
              William Marshall Hubbard    on behalf of Joint Debtor Wanda June Hatton mhubbard@honeylawfirm.com,
               judith@honeylawfirm.com;mhoney@honeylawfirm.com;emily@honeylawfirm.com;lasonia@honeylawfirm.com;l
               ysa@honeylawfirm.com;honeylawfirm@gmail.com;hlfecfbackup@gmail.com;shannon@honeylawfirm.com
                                                                                              TOTAL: 15
```

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

IN RE: Bobby Joe and Wanda HATTON, Debtors      No. 6:13-bk-72529
                                                Ch. 7

**ORDER**

Before the Court are the chapter 7 *Trustee's Objection to Amended Exemptions and Motion For Turnover* filed on December 3, 2014, and creditor Eugene Parliament's *Amended Objection to Exemptions* filed on December 5, 2014, which also incorporates by reference all previous objections filed by Parliament. The trustee argues that because the Ouachita River is a navigable waterway running through the center of the debtors' property, the two parcels making up the debtors' homestead are not contiguous and the debtors are not entitled to claim a homestead exemption on the entire property under Arkansas law. Parliament incorporates the trustee's objection and also argues that (1) the debtors' valuation of the property is incorrect, (2) the property is not rural and the debtors are not entitled to claim a homestead on the 79.96 acre tract, (3) the debtors gerrymandered their survey to exempt all the prime real property, (4) the debtors' daughter's home should not be included in the debtors' claim of homestead, (5) the homestead is made up of parcels bought by the debtors at different dates, and (6) the debtors have not made it clear what property is being claimed exempt. The Court heard the objections on January 28, 2015, and at the conclusion of the trial, took the matter under advisement to review the cases cited by the parties. For the reasons stated below, the Court sustains the trustee's and Parliament's objections to the debtors' claim of a homestead exemption in the entire 79.96 acre parcel but allows the homestead exemption in the approximately 40 acre parcel on which the debtors' home is located. The Court overrules Parliament's remaining objections. The Court grants the trustee's motion for turnover of the property in which the debtors are not entitled to a homestead exemption.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157,

and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

The issue, simply stated, is whether the Ouachita River, which flows through the debtors' property, destroys the contiguous nature of the debtors' claimed 79.96 acre tract of land such that the debtors cannot claim a homestead exemption under Arkansas law in the entire 79.96 acre parcel. This issue, however, requires the resolution of a number of sub-issues, such as acquisition of the property, the location of the property, the navigability of the Ouachita River, and whether a navigable river destroys the necessary contiguity of the debtors' property for homestead purposes under Arkansas law. The burden of proving that the exemption was not properly claimed is on the objecting parties. Fed. R. Bankr. P. 4003(c).

The subject property consists of 79.96 acres according to a July 2, 2014 survey that was admitted into evidence. The debtors purchased the initial 43 acres of the 79.96 acre parcel–the east side–in April 1988. They purchased the remaining 36.96 acres–the west side–in April 2002.[1] The two tracts of land have a common border running north and south that splits the land. The Ouachita River also flows generally north to south through the debtors' property, dividing it in half. According to the trustee, the river nullifies the contiguous nature of the properties and is sufficient to extinguish the debtors' right to claim a homestead in the entire 79.96 acres under Arkansas law.

Arkansas courts have recognized that homestead law "should be liberally construed to effect its benign purpose." *Stuckey v. Horn*, 200 S.W. 1025, 1026 (Ark. 1918); *City Nat'l Bank v. Johnson*, 96 S.W.2d 482, 484 (Ark. 1936) ("homestead laws are remedial and

---

[1] The 36.96 acre parcel was part of a larger land purchase the debtors made at that time. It was identified on the July 2 survey.

should be liberally construed to effectuate the beneficent purposes for which they were intended."). Before addressing the primary issue before the Court, the Court must first dispose of some related objections raised by Parliament. Parliament's first related objection is that the debtors "gerrymandered to improperly exempt for the Debtors all the prime real property of the estate, while leaving oddly shaped less valuable parcels for the benefit of the creditors." The Court finds that this argument is without merit.

Beginning in 1896, the Arkansas Supreme Court has been consistent in its holding that a debtor may not select a homestead that is laid out in an arbitrary, capricious, and unreasonable shape, to the injury of the debtor's creditors. *See Sparks v. Day*, 33 S.W. 1073, 1074 (Ark. 1896). The *Sparks* court quoted with approval an Alabama court case:

> An inspection of the remarkable diagram of the homestead attempted to be selected in this case, running, as its boundaries do, in a zigzag direction, and shifting towards every possible point of the compass, shapeless in its capricious irregularity, and without apparent design except to take unjust advantage, . . . is the surest demonstration that such a thing cannot be tolerated by the law.

*Id*. (quoting *Jaffrey v. McGough*, 7 So. 333 (Ala. 1890)). In the case before the Court, Parliament has alleged that the debtors obtained a new survey to establish a tract of land that leaves invaluable the remaining property that was owned by the debtors. However, a review of the survey does not suggest another division that may be superior, nor did Parliament suggest one. If the property is rural, the debtors are entitled under the Arkansas Constitution to carve out up to 80 acres from the subject property. Ark. Const. art. 9, § 4. The Court finds that the proposed homestead proffered by the debtors is not arbitrary, capricious, or unreasonable in the light of the allowed exemption and overrules this part of Parliament's objection to exemptions.

Related to first objection, Parliament also argues that the debtors provided no evidence that the subject property qualifies as a rural homestead (which allows the debtors to claim up to 80 acres of property as a homestead). The determination of whether a property is rural or urban is based on the facts of each case. *In re Weaver*, 128 B.R. 224, 227

3

(Bankr. W.D. Ark. 1991) (citing *King v. Sweatt*, 115 F. Supp. 215, 220 (W.D. Ark. 1953). In this instance, Parliament did not identify to the Court within what urban area he believed the subject property to be located. Based on the separate debtor Bobby Hatton's [Hatton] testimony and the debtors' schedules, Sims appears to be the closest community to the subject property. On cross-examination, Hatton testified that the debtors receive their mail in Sims but that they receive no other benefit from Sims. Hatton also testified that the subject property is not located within the plat map of Sims. Regardless, plat maps are not necessarily determinative of whether a homestead is urban property or rural property. *Id.* at 227 (citing cases). The use of the property is also pertinent to the determination. *Id.* The trustee introduced an aerial photograph of a portion of the debtors' property. The subject property and all of the property surrounding the subject property consists primarily of trees, a river, and pasture. Approximately six commercial chicken houses border the property on the west side. Although the easternmost part of the property is not visible in the aerial photograph, it appears to the Court that the property and the surrounding area is used primarily, if not exclusively, for agricultural purposes, which generally indicates a rural homestead. *Id.* Based on the evidence before the Court, the Court finds that the subject property is rural property and the debtors are entitled to claim up to 80 acres under Arkansas's homestead laws without regard to value. Ark. Const. art. 9, § 4. In so holding, the Court overrules Parliament's objections that (1) the debtors are not entitled to claim 80 acres as a homestead because it is not rural property and (2) the debtors have inaccurately valued their property.

The debtors included in their schedules a description of the real property for which they are claiming an exemption. The description included their home and a "movable lofted barn." Parliament also objected to the debtors' claim of an exemption in the "movable lofted barn." According to Hatton, the movable lofted barn is the debtors' daughter's residence. Hatton testified that he does not own the structure and does not know the

value of the structure.[2] He also testified that he has never lived in the "barn" and that he has no intention of moving the "barn." That is all the Court knows about the movable lofted barn. Without more information, the Court cannot find that Parliament met his burden of proving that the debtors were not entitled to claim an exemption in the movable lofted barn. Accordingly, the Court overrules Parliament's objection to the debtors' claim of an exemption in the "movable lofted barn."

Parliament's final stand-alone objection is that the debtors purchased the two tracts of land at different times and hold separate deeds to each parcel. Parliament did not make any attempt to explain to the Court the perceived importance of this fact. Under Arkansas law, a person may enlarge an established homestead by acquiring contiguous property. *Kulbeth v. Drew County Timber Co.*, 188 S.W. 810, 815 (Ark. 1916). If the debtors were entitled to a homestead in the 43 acres purchased in 1988, without considering the trustee's and Parliament's "a river runs through it" argument, the debtors are likewise entitled to a homestead in the contiguous 36.96 acre parcel the debtors purchased in 2002. Hence, the Court overrules Parliament's "two deed" objection to the debtors' claim of a homestead exemption.

Having disposed of the preliminary sub-issues that were raised by Parliament, the Court now turns to the crucial issue: whether the Ouachita River, which flows through the debtors' property, destroys the contiguous nature of the debtors' 79.96 acre tract of land such that the debtors cannot claim a homestead exemption under Arkansas law in the entire 79.96 acre parcel. As stated above, in Arkansas, when a landowner claims a homestead in two parcels of land, the land constituting the homestead must be contiguous. *Hambleton v. Coopwood*, 388 S.W.2d 92, 93 (Ark. 1965); *Stuckey*, 200 S.W. at 1026. Although the 43 acre tract and the 36.96 acre tract are themselves contiguous as

---

[2] Neither side introduced evidence as to the ownership of the "movable lofted barn." However, if the barn is owned by the debtors' daughter, then it would not be property of the estate, making moot any objection to the debtors' claim of a homestead in the "barn."

platted, the trustee and Parliament argue that the Ouachita River defeats that contiguity.

The Arkansas Supreme Court has ruled in a number of cases that a homestead is sustainable even though the property is separated or divided by a roadway or railway. For instance, in *Stuckey*, a railroad crossed an 80 acre tract of land and severed a wedge-shaped piece of land consisting of approximately 10 to 15 acres. Because the railroad company obtained only a right of way, the court held that the railroad easement that it obtained by condemnation did not change the landowner's fee title for the entire 80 acres. The remaining segments–the wedge-shaped piece of land and the remaining 65 to 70 acre tract–"were contiguous within the requirement of the law that the land claimed as a homestead be contiguous . . . ." *Stuckey*, 200 S.W. at 1026. Likewise, in *Hambleton*, the court stated that even though a road separated two 40 acre tracts, the road did not defeat the landowner's claim of a homestead in the entire 80 acre parcel because the landowner retained fee title to the property; the public only had an easement to travel over the road. *Hambleton*, 388 S.W.2d at 94. The *Hambleton* court also referenced Corpus Juris Secundum, which states that "'it is commonly held that an owner of land may claim a homestead in a lot or tract divided by a highway, street, or alley, railroad right of way, stream of water, quarter-section line, fence, or garden . . . .'" *Id.* (quoting 40 C.J.S. Homesteads § 66, p. 506); *accord King v. Sweatt*, 115 F. Supp. 215, 219 (W.D. Ark. 1953) (quoting 26 Am. Jur., Homestead, § 36: "A claim of homestead is sustainable with respect to lots or parcels which are separated by a street, an alley, or a way of another character–for example, an easement or right of way.").

The notable difference between the cases cited and the case before the Court is that the debtors' property is not divided by a public roadway or a railroad easement; it is divided by the Ouachita River. The Court could not locate any cases in Arkansas that address homestead property that is divided by a river. If the Ouachita River is a navigable waterway, then under Arkansas law, the riparian landowner (in this case, the debtors) owns only to the high-water mark. *St. Louis, I.M. & S. Ry. Co. v. Ramsey*, 13 S.W. 931, 933 (Ark. 1890) ("the beds of all navigable rivers in the state belong to the state in trust

6

for the use of the public").

Arkansas has adopted the standard definition of navigability, which is generally defined "in terms of a river's potential for commercial usefulness; that is, whether the water could be used to remove products of the surrounding land to another place." *State v. McIlroy*, 595 S.W.2d 659, 663 (Ark. 1980). In 1980, by finding that the Mulberry River was a navigable waterway in Arkansas, the Arkansas Supreme Court expanded the definition of navigability to include recreational use. *Id.* at 665 (stating that recreational use, for which the Mulberry river has been used extensively, included "flatbottomed boats for fishing and canoes for floating or both"). In the case before the Court, the trustee introduced sufficient evidence to demonstrate the recreational use of the Ouachita River both above and below the debtors' property. Therefore, the Court finds that the Ouachita River is a navigable waterway. *Cf. Ark. Power & Light Co. v. Fed. Power Comm'n*, 125 F.2d 982, 985 (8th Cir. 1942) ("The Ouachita river in Arkansas is by the terms of the license [to dam the river] a navigable stream."); *Free v. Sample* 324 F. Supp. 1362, 1364 (W.D. Ark. 1971) ("There is no question but what the Ouachita River in this area from its confluence with the Black and Mississippi Rivers to above Lake Hamilton has historically been a navigable stream."). As a navigable waterway, the river holds certain incidental rights. Those rights include its designation as a public waterway and the commensurate privileges that go with that designation. *McIlroy*, 595 S.W.2d at 665.

As a public waterway, the trustee argues that the land beneath the river belongs to the state and does not belong to the debtors. Therefore, the two parcels that make up the debtors' homestead exemption are not contiguous, as required by state law. The Arkansas Supreme Court supports the trustee's argument: "[t]he owner of land on the margin of a navigable stream in this state, holding under a grant from the United States government, does not take *ad medium filum aquae* [to the middle thread of water], but to high-water mark, . . . and the beds of all navigable rivers in the state belong to the state in trust for the use of the public." *Ramsey*, 13 S.W. at 933; *see also U.S. v. Holt State Bank*, 270 U.S. 49, 54 (1926) ("It is settled law in this country that lands underlying navigable

7

waters within a state belong to the state in its sovereign capacity and may be used and disposed of as it may elect . . . ."). In the *Ramsey* case, the landowners obtained title to the disputed property under a patent from the United States government and received title to property "on the bank of and bordering on White river . . . ." 13 S.W. at 931. The issue before the court was whether the landowners owned the land to the center of the river–gravel bars and all–or just to the river's edge. The court held that the landowners owned the property only to the high-water mark of the river. Under the trustee's argument, because the Ouachita River belongs to the state, the two parcels of land that make up the debtors' claimed homestead cannot be contiguous, thereby defeating the debtors' claim to a homestead exemption in the total 79.96 acres.

The Arkansas Court of Appeals also supports the trustee's argument that a navigable river destroys the contiguity of a parcel of land. *See Rio Vista, Inc. v. Miles*, 374 S.W.3d 698 (Ark. Ct. App. 2010). In *Rio Vista*, the prior owner of property, which was located on both sides of the Spring River (a navigable river according to the court), divided and conveyed his property to two other people, the common boundary between the property being "the North and East Bank of Spring River." One of those parcels was later conveyed to another person and the boundary was then described as "the Northerly Bank of Spring River." *Id.* at 700. The first issue before the court concerned the ownership of a sliver of land near the top bank on the east side of the Spring River. Because the transfer deeds did not include a legal description of the boundary between the properties, the court found that the riparian landowner on the east side of the river owned the property up to the high-water mark, which included the sliver of land. The trial court, citing *Ramsey*, noted that "neither party could own the area below the ordinary high-water mark of the river because it is navigable." *Id*. at 701.[3]

---

[3] The second issue before the court concerned the alleged adverse possession of that same sliver of land. The court denied the claimant's adverse possession claim, finding that the parcels were not contiguous because the claimant's property and the sliver of land were separated by the river, which belonged to the state. *Id.* at 703. In finding that the river destroyed the contiguity of the two parcels, the court cited *Patrick v.*

8

Regardless, homestead exemption laws are more favorable to the claimant and, in Arkansas, are to be liberally construed. *City Nat'l Bank*, 96 S.W.2d at 484; *Stuckey*, 200 S.W. at 1026. The Arkansas Supreme Court has already found that railways and roads that bisect a landowner's property do not destroy the landowner's right to claim a homestead exemption in the property that is located on both sides of the railway or road when the landowner holds fee title to the entire parcel. *Hambleton*, 388 S.W.2d at 94 (finding that road that bisected property did not defeat a homestead); *Stuckey*, 200 S.W. at 1026 (finding that two parcels divided by a railway "were contiguous within the requirement of the law that the land claimed as a homestead be contiguous . . . ."). Based on these cases, it would not be a stretch for the Court to find that a navigable river that bisects a landowners' property is analogous to an easement or right of way and, likewise, does not destroy the landowners' right to claim a homestead exemption in the entire property when the landowner holds fee title to the entire parcel. However, as stated above, the law is clear in Arkansas that the riparian landowner owns property only up to the high-water mark of a navigable waterway; the state owns the beds of all navigable waterways in trust for the use of the public.

In 1980, when the Arkansas Supreme Court expanded the definition of navigability to include recreational use, the Arkansas legislature responded quickly. In the *McIlroy* case, the court found that the Mulberry River, which passed through the landowner's 230

---

*McSperitt*, 983 S.W.2d 455 (Ark. Ct. App. 1998). In *Patrick*, the court similarly found that a street that separated the landowner's property from property on the other side of the street was enough to destroy the required contiguity that is required for adverse possession.

Although *Patrick* and the second issue in *Rio Vista* each support the trustee's argument, these cases involve adverse possession claims, not homestead exemptions. In Arkansas, a person can adversely possess property if they hold color of title to property that is contiguous to the property being claimed by adverse possession for a period of seven years and, during that time, pay taxes on the contiguous property. Ark. Code Ann. § 18-11-106(a)(2) (Supp. 2013). Based on the *Rio Vista* and *Patrick* cases, it is clear that property that is located on the other side of a river or across a road is not contiguous, at least for adverse possession purposes.

9

acre property, was a navigable waterway. *McIlroy*, 595 S.W.2d at 661. In doing so, the court, at a minimum, clouded the landowner's title with regard to the Mulberry River. In response to the *McIlroy* decision, the legislature adopted Act 830 of 1981, which specifically quitclaimed title to the streambed of the Mulberry River to the owners of property adjacent to the river. At the same time, the legislature retained "an easement to run with the land for free passage by the public over the land by canoe, boat, other watercraft, swimming, wading, or walking, and for fishing, recreation, travel, commerce, and other purposes." Ark. Code Ann. § 22-5-406(a) (Repl. 2004); J.W. Looney & Steven G. Zraick, *Of Cows, Canoes, and Commerce: How the Concept of Navigability Provides an Answer if You Know Which Question to Ask*, 25 U. Ark. Little Rock L. Rev. 175, 182-83 (2002). By divesting the state's ownership interest in the navigable waterway but retaining an easement for the public use of the river, the legislature maintained the river's designation as a public waterway while returning fee title to the respective landowners. In the case before this Court, if the debtors' property straddled the Mulberry River instead of the Ouachita River, the Court's holding would be easy. However, that is not the case.

In the *Stuckey* and *Hambleton* cases, the Arkansas Supreme Court found that property divided by a public road or a railway was still contiguous for purposes of a homestead. The court reasoned that the road or railway was only an easement or right of way and did not change the landowner's fee title ownership of the property. A navigable waterway is different because the state holds more than just an easement or right-of-way; it owns the land between the high-water mark. Further, the Court cannot deem the state's ownership of the river to be tantamount to an easement when, in another instance, the legislature quitclaimed a navigable waterway while specifically reserving an easement. For this reason, the Court must find that the Ouachita River, which is navigable and, therefore, owned by the state, separates the two parcels for which the debtors claim a homestead exemption and destroys the contiguous nature of their claimed homestead.

For the reasons stated above, the Court sustains the trustee's and Parliament's objections

to the debtors' claim of a homestead exemption in the entire 79.96 acre parcel but allows the homestead exemption in the approximately 40 acre parcel on which the debtors' home is located–the land that is generally to the east of the Ouachita River that divides that debtors' property. The Court also finds that the debtors are not entitled to a homestead exemption consisting of approximately 40 acres to the west of the Ouachita River that divides the debtors' property and grants the trustee's motion for turnover of that property. The Court overrules Parliament's remaining objections.

IT IS SO ORDERED.

                                                  Ben Barry
                                                  United States Bankruptcy Judge
                                                  Dated:  03/09/2015

cc:    W. Marshall Hubbard, attorney for the debtors
        J. Brad Moore, attorney for the chapter 7 trustee
        Frederick S. Wetzel III, chapter 7 trustee
        John Howard, attorney for Parliament
        Stephen Smith, attorney for Farm Credit Services